WHITE. The. See Case No. 7,005.

## Case No. 17,534.

### WHITE et al. v. ADAMS.

[5 Ben. 355.] [1]

District Court, E. D. New York. Oct., 1871.

SEAMEN'S WAGES—ABANDONMENT OF SHIP.

1. Where a ship, loaded with railroad iron, and leaking, in heavy weather, was abandoned, and the seamen afterwards filed a libel to recover wages for the whole voyage, on the ground that she was fraudulently abandoned, *held*, that, though there were some extraordinary features in the case, the court was satisfied that the master acted according to his best judgment in abandoning the ship, and the court would not adopt a different judgment now.

2. The seamen, therefore, could not recover wages for the voyage, but were entitled to recover wages till the abandonment.

[This was a libel for seamen's wages by Charles White and others against Samuel P. Adams.]

Wilcox & Hobbs, for libellants.
Man & Parsons, for respondent.

BENEDICT, District Judge. The bark Nellie Chapin, on the 7th day of October, 1869, while on a voyage from Bristol to Lisbon, was abandoned at sea. The crew, together

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

with a boat, some sails, provisions, and other articles, were taken off by a passing vessel. Four of the seamen now bring this action to recover of the owners of the bark wages for the whole voyage, upon the ground that the master fraudulently abandoned the vessel, and thereby unlawfully prevented them from performing their contract.

The evidence certainly presents some extraordinary features; but whatever else might be held to be the proper conclusion to be drawn respecting the conduct of the master in abandoning his vessel, the charge of fraud cannot be held to be sustained. The evidence leaves no doubt in my mind that the vessel was abandoned in good faith, solely because the master came to the conclusion that if they failed to take refuge in the vessel which spoke them, and by which they were carried into Barcelona, he would assume an unwarranted risk of the loss of their lives. It is true that the evidence affords some foundation for the argument that the fears of the master were exaggerated, and that if a bolder course of action had been adopted, it would have resulted in saving the vessel, with all on board; and it would seem that the crew was not unwilling to run the risk of continuing with the vessel. But the ship was loaded with railroad iron, she was leaking, the sea was heavy, and the weather not encouraging, and in view of the circumstances, and under the responsibility upon him, the master adopted the course which, I cannot doubt, upon the evidence, was the one which commended itself to his judgment. It is not for a judge sitting in his room ashore to decide that the honest conclusion of a master, arrived at under such circumstances, was unjustifiable, because, after the fact, and in the cold light of a judicial examination, the facts may appear to lead to a different conclusion as to what would have been the best course for the master to pursue. I therefore hold that the libel cannot be maintained for the whole amount of wages for the voyage. The libellants are, however, entitled to recover wages up to the time of leaving the ship, and a decree will accordingly be entered in their favor for any balance that may appear to be due them up to that time.